UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

MILLER HAGGA,

               Defendant.

**DECISION AND ORDER**
20-CR-49-A

Defendant Miller Hagga is charged in a 34-count Superseding Indictment (Dkt. No. 23) returned October 27, 2020, along with seven co-defendants, with violating one of those counts, *i.e.*, multi-drug narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C), 21 U.S.C. § 856(a)(1), and 21 U.S.C. § 846 (Count 2).  Pending before the Court are Defendant's bail appeal and motion for temporary release.

Pursuant to 18 U.S.C. § 3145(b), Defendant appeals (Dkt. Nos. 211, 215) a detention order (*see* Dkt. No. 43, pp. 13-15) of Magistrate Judge Stephanie K. Bowman of the Southern District of Ohio where the detention hearing was held, prior to Defendant's initial appearance in the Western District of New York.  The Government submitted a response in opposition (Dkt. No. 230), and Defendant filed reply papers (Dkt. Nos. 242, 243).  Pretrial Services has submitted a memorandum, dated September 21, 2021, which indicates the Probation Office in this District continues to recommend detention, as it did when Defendant was arraigned here.  The Court heard oral argument on the bail appeal on November 17, 2021, and after receipt of supplemental medical records (Dkt. No. 265) and the parties' supplemental memoranda

concerning those records (Dkt. Nos. 276, 277), the Court heard a continuation of the oral argument on November 30, 2021.

Upon *de novo* review of all the circumstances, and for reasons stated below, the Court finds pursuant to 18 U.S.C. § 3142(e) that no conditions of release, or combination of conditions, will reasonably assure the safety of the community.  The Court need not reach the issue of whether there are any available conditions that will reasonably assure Defendant's appearances as required.  Accordingly, the Court AFFIRMS the detention order.

As to Defendant's motion (Dkt. No. 210) for temporary release pursuant to 18 U.S.C. § 3142(i), that motion is DENIED, for the reasons stated herein.

## BACKGROUND

Defendant was arrested in Cincinnati, Ohio under a federal arrest warrant on October 29, 2020 (Dkt. No. 49), two days after the return of the Superseding Indictment in this case.  The Government moved for detention and proceeded by proffer at a detention hearing (*see* Dkt. Nos. 210-1, 211-1, 230-2 [detention hearing transcript]) held on November 4, 2020 before Magistrate Judge Bowman in the Southern District of Ohio—before an initial appearance in this District before Magistrate Judge Roemer. The defense asked the Court to follow Pretrial Services' recommendation (*see* Dkt. No. 215 [S.D. Ohio Pretrial Services Report]) to release Defendant on conditions to his residence in Ohio, *i.e.*, to home incarceration.  Defense counsel also repeatedly raised the issue of Defendant's Crohn's disease,[1] which she insisted is a "complicated health

---

[1] "Crohn's disease is a type of inflammatory bowel disease (IBD).  It causes inflammation of your digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition . . . While there's no known cure for Crohn's disease, therapies can greatly reduce its signs and symptoms and even bring about long-term remission and healing of inflammation.  With treatment, many people with

2

issue" that could not be adequately addressed or treated in a local jail, considering Defendant's IV (infusion) therapy he underwent at an outpatient hospital every six weeks.

Magistrate Judge Bowman ordered Defendant detained pending trial. She noted Defendant's lengthy criminal record beginning in 2002, with "almost annual contact with law enforcement", but not much time spent incarcerated despite Defendant's long record; the seriousness of the charges in this case; and concerns about Defendant appearing in New York (while noting that his appearance record was "pretty good" for the length of his criminal record). Magistrate Judge Bowman concluded that there was no condition of release that would reasonably address Defendant's dangerousness to the community.

The Magistrate Judge also stated,

> And I share your counsel's concerns about your Crohn's disease and the treatment that you are going to require; however, I know, you know, and I know, the jails and the prisons are able to provide medical care. I don't know if during some of your prior stints in State custody you had to receive IVs while you were in custody, but we certainly can ensure that that does happen. (Dkt. No. 210-1, p. 11).

Immediately after the Magistrate Judge ordered Defendant detained, and to be transferred to the Western District of New York "to face the charges there", defense counsel again raised the issue of Defendant's medical condition and the fact that he had no established doctor or available treatment for him in New York, and "urge[d] the Court to review its bond determination." The Magistrate Judge adhered to her decision, and

---

Crohn's disease are able to function well." *Crohn's disease: Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last visited Dec. 8, 2021).

stated, "The facilities in New York are aware of their obligations.  The marshal services are aware of its obligations.  Like I said, his medical condition has not slowed down his criminal activity . . . If it's a concern, the district judge in New York can take that into consideration."

The Court then issued an order of detention (*see* Dkt. No. 43, pp. 13-15, Dkt. No. 230-3), finding that Defendant is to be detained pending trial because the Government had proven by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.[2]  The Magistrate Judge listed the reasons for detention in the order, in addition to the findings made on the record during the hearing.

Pretrial Services in this District issued a memorandum on November 16, 2020, disagreeing with the recommendation of the bail report from Pretrial Services in the Southern District of Ohio, and instead recommending detention.

Following a transfer pursuant to Federal Rules of Criminal Procedure 5(c) (*see* Dkt. No. 43), Defendant was arraigned before Magistrate Judge Roemer on November 20, 2020, at which time the Court ordered Defendant to "continue to be remanded to the custody of the U.S. Marshal Service as an Order of Detention Pending Trial has been filed on 11/4/2020 in the Southern District of Ohio."  (Dkt. No. 58).  The parties thereafter appeared before Magistrate Judge Roemer on a series of dates for status conferences to discuss Defendant's detention and medical condition, *i.e.*, December 16, 2020; December 18, 2020; January 5, 2021; January 14, 2021; and January 25, 2021

---

[2] Magistrate Judge Bowman did not find, however, that the Government had met its burden as to Defendant being a flight risk.

(*see* Dkt. Nos. 232, 233, 234, 235, 236).  It warrants mentioning that Defendant has been detained at several facilities during the pendency of this case.[3]

The defense argues, referring to the aforementioned dates, that "[l]ike the magistrate judge in Ohio, this Court has consistently expressed concern for, and frequently addressed with the government and the marshal, the defendant's need for appropriate medical treatment while in custody . . . Despite the Court's best efforts, it has also been unable to [e]nsure that Mr. Hagga receives appropriate and necessary medical care, medication, and specialized diet while in custody."

## DISCUSSION

### I.    Bail Appeal.

Under the Bail Reform Act of 1984, a criminal defendant awaiting trial must be released on bail unless the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  When reviewing a magistrate judge's detention order, the district court performs *de novo* review of that order.  *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985) (finding that a district court "should not simply defer to the judgment of the [M]agistrate, but [should] reach its own independent conclusion").  When conducting *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence.  *See e.g., United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).  The appeal of a magistrate judge's pretrial detention order to this Court is to be "determined promptly."  18 U.S.C. § 3145(b).

---

[3] Those facilities are the Butler County Jail in Ohio, the Northeast Ohio Federal Detention Center, the Chautauqua County Jail, and most recently, the Livingston County Jail.

The Government has the burden to show by clear and convincing evidence that the danger posed by the defendant cannot be alleviated by any combination of available bail conditions. *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985).  It also has the burden to show by a preponderance of the evidence a serious risk of flight for which no conditions will reasonably assure the defendant's appearances in court and as otherwise required. *Id*.

In determining whether there are conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider the factors listed in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (ellipses supplied).

For serious narcotics offenses, crimes like the Title 21 offense punishable by a maximum term of ten years' imprisonment or more charged in the Superseding Indictment against Defendant, a finding of probable cause to believe that such an

6

offense was committed, and that the defendant committed it, gives rise to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community."  18 U.S.C. § 3142(e)(3).  However, a grand jury indictment alone, such as the Superseding Indictment (Dkt. No. 23) returned here, establishes probable cause; no independent finding of probable cause by the Court is necessary.  *See United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

When the § 3142(e) rebuttable presumptions apply, the Government retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption."  *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir. 1991).  "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant."  *Id.* (quotation omitted).  The § 3142(e) presumptions, if unrebutted, are alone sufficient to sustain the Government's burdens of proof on danger and serious risk of flight.  *See id.; see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

In this case, Defendant argues that the Court should conduct a *de novo* detention hearing because the one held in the Southern District of Ohio was "cursory" and "truncated", and he "never had a full and fair detention hearing in either Ohio or New York"; or, in the alternative, the Court should order that the hearing be reopened pursuant to 18 U.S.C. § 3142(f)(2)(B) based on a substantial change of circumstances since the initial hearing.  In other words, Defendant argues that the Magistrate Judge in

7

Ohio never made the appropriate findings of either danger to the community or risk of flight in detaining him, and instead "simply maintained the status quo and detained [Defendant] for transportation to the Western District of New York to allow this Court to revisit and determine [Defendant]'s detention . . ."

The Court reads the record differently.  The Magistrate Judge in the Southern District of Ohio made oral findings (specifically as to dangerousness) and issued an order of detention with a list of reasons why Defendant should be detained.  Moreover, regardless of whether the Southern District of Ohio or the Western District of New York held the detention hearing, on appeal this Court nevertheless conducts a *de novo* review of the bail determination.

The Government opposes Defendant's bail appeal, arguing that Defendant should be detained on the bases of both dangerousness and flight risk.

The Court has considered each of the § 3142(g) factors in this case.  After carefully analyzing all the circumstances, the Court finds that the Government has established by clear and convincing evidence that Defendant is a danger to the community and by the same standard that any set of conditions that might be imposed on his release will not adequately assure the safety of the community.  The Court also finds that Defendant has not rebutted the presumption of detention.

The nature and circumstances of the offense, and weight of the evidence, weigh in favor of detention.  Defendant faces a mandatory-minimum sentence of ten years and a maximum of life imprisonment if convicted of the multi-drug narcotics conspiracy.  Moreover, the conspiracy as charged was expansive, involving at least five other individuals (all co-defendants) and various controlled substances, *i.e.*,

methamphetamine, heroin, fentanyl, acetyl fentanyl, cocaine base, cocaine, and hydrocodone.  According to the Superseding Indictment, the conspiracy took place over the course of approximately 22 months, from December 2018 through October 2020. The Government further explains that the investigation identified Defendant as the Source of Supply and middleman for co-defendant Rocco Beardsley, based in Cincinnati, Ohio.  The Government apparently has electronic communications, including those made between Defendant and several co-defendants on their Facebook accounts, as well as "witness/source information" to implicate Defendant's involvement in this conspiracy.  Furthermore, the Government states that other types of evidence it has are controlled buys, search warrants, laboratory reports, and cellphone extractions.

As to the history and characteristics of Defendant, who is about 38 years old, he was born in Jamestown, New York but has resided in Ohio since 1996.  He does have strong ties to that community, with much of his family residing in that area, to include his long-term girlfriend and their three children, his girlfriend's son, and Defendant's four children from another relationship.  Defendant has not worked since approximately 1999, although he explained that he is in the process of obtaining more Social Security benefits that he previously received from 2011 to 2017.  He is an alcoholic but has been reportedly sober since 2005 due to his Crohn's disease diagnosis, and he used marijuana daily to relieve his symptoms of Crohn's disease.

Aside from Defendant's family ties and lengthy period of residence in his community, Defendant's history and characteristics otherwise tip the balance against release on this factor.  His criminal history, as noted by Magistrate Judge Bowman, is extensive—yet the longest term of confinement Defendant has served is 180 days (six

9

months).  From the age of 18 to present, Defendant has accrued 23 arrests and what appears to be at least seven convictions resulting in terms of incarceration.  The Government has preliminarily calculated Defendant as having 13 criminal history points and therefore landing him at Criminal History Category V.  The charges span the gamut from minor misdemeanor drug possession to multiple charges involving stolen property and theft, and weapons offenses (carrying a concealed weapon, and receiving a stolen firearm).  Defendant also has 22 driving under suspension/ no driver's license related offenses, with 14 of those being convictions.  He has pending charges in Ohio for drug abuse, resisting arrest, and criminal damaging relative to an arrest on March 4, 2020, as well as a prior probation violation.  It also looks like Defendant was on a criminal justice sentence at the time the alleged conspiracy took place.

Defendant's past conduct and criminal record demonstrate that his release on conditions would not adequately assure the safety of the community.  With respect to the proposed conditions of release to home confinement, electronic monitoring devices "can be circumvented" and "rendered inoperative."  *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

Under 18 U.S.C. § 3142(g)(3)(A), the Court may also consider a defendant's physical condition in analyzing his or her history and characteristics.  On appeal, Defendant argues at length in his initial motion papers about alleged inadequate medical care, as recognized by the Government (*see* Dkt. No. 230, p. 12 ["The defendant's basis for his appeal relies primarily on his medical status."]).  However, Defendant now argues that the medical records submitted by the defense "have no

bearing on [Defendant's] appeal of his detention order, which does not rely in any respect on any issues relating to medical treatment."

In any event, the Court is to consider a person's "physical and mental condition" in assessing a bail appeal (*see* 18 U.S.C. § 3142(g)(3)(A)), along with all the other § 3142(g) factors.  At the Court's directive, Defendant filed approximately 300 pages of his medical records under seal, which cover November 2020 to early June 2021 and Defendant's detention at the three most recent facilities where he has been housed.[4] As stated above, Magistrate Judge Bowman expressed her concerns about Defendant's Crohn's disease and the treatment he would be receiving while detained in this case, as did Magistrate Judge Roemer in a multitude of appearances held on this issue (*see* Dkt. Nos. 232, 233, 234, 235, 236).  However, neither magistrate judge had the benefit of Defendant's medical records.

The Court has reviewed Defendant's supplemental medical records (Dkt. No. 265), as well as the parties' supplemental memoranda concerning those records (Dkt. Nos. 276, 277), and concludes that Defendant's medical condition does not alter its conclusion as to the bail appeal.  The Court has gleaned from these submissions that Defendant's Crohn's disease is a challenging condition to live with, and he has

---

[4] In reply, Defendant initially filed, in response to this Court's text order (Dkt. No. 213) asking the defense for medical records to support the claims regarding Defendant's allegedly "worsening" medical condition and inadequate treatment, about 150 pages of medical records under seal (Dkt. No. 242).  However, it was conceded by the defense that those records "are largely bills for service and communications between [Defendant's significant other] and the medical providers . . ."

As to the supplemental records that were filed (Dkt. No. 265), at oral argument on the bail appeal and motion for temporary release, defense counsel stated that he had issues obtaining records from June 2021 to the present, which is why none of the records from that period were filed.  He acknowledged, however, that those records would generally reflect the type of medical treatment Defendant has received over the course of his period of detention, which is in the records filed at Docket Number 265.

experienced "flare-ups" and related symptoms while in jail.  Even so, the facilities where

Defendant has been detained have responded to Defendant's complaints and concerns

about his medical issues, albeit perhaps not as quickly as he would like.  The

Government concedes that Defendant's medical care was "not perfect" during his initial

period of incarceration but argues that after the disruption caused by Defendant's arrest

and detention, and after the Government and the U.S. Marshals Service became

involved, medical appointments have been scheduled for Defendant.

Moreover, Defendant has refused certain medical treatment for his Crohn's

disease while in jail.  For example, when Magistrate Judge Roemer was attempting to

sort through Defendant's medical issues without any records, Defendant had refused an

infusion because he believed that the dosage was too strong considering the frequency

of the infusions he had recently undergone.  Yet, later, it was revealed that Defendant's

doctor from home agreed with the course of treatment and the strength of the dosage

that Defendant had been offered.[5]  In addition, Defendant has had Crohn's disease

since 2005 (with several periods of incarceration in the interim), but this medical

condition has not dissuaded him from accruing a lengthy criminal history.

The Government also explains it has learned that Defendant, while being

detained at Livingston County Jail, is "receiving outside care through University of

---

[5] In Defendant's initial papers it was argued that Defendant's colonoscopy at the Chautauqua County Jail
was botched, resulting in a provider "accidentally punctur[ing] his intestine" and "resulting in the need for
additional, immediate medical treatment."  (Dkt. No. 210, p. 8).  Defendant also argued that due to that
traumatizing event, Defendant distrusts medical providers at the jail and refuses any further
colonoscopies while in jail—although he is supposed to have regular colonoscopies to monitor his
Crohn's Disease.  In Defendant's reply, however, it is conceded that this was inaccurate, in that
Defendant's "intestine was punctured during a previous colonoscopy **in 2010, while out of custody**,
resulting in internal bleeding that was not discovered for several days and which required multiple blood
transfusions and the surgical removal of parts of his small and large intestines.  Given the fear of similar
complications, Mr. Hagga has since refused in-custody colonoscopies, with the exception of one that was
performed by his physician while in local custody in Ohio."  (Dkt. No. 243, p. 15 n.1) (emphasis added).

Rochester Medical Center Gastroenterology", he recently refused an ordered procedure, and he was transported at least four times to outside medical appointments between July 2021 and September 9, 2021.

The Court finds that Defendant is a danger who must be detained pending trial, as there are no conditions of release that will reasonably assure the safety of the community.

## II.     Motion for Temporary Release.

Also pending is Defendant's motion for temporary release (Dkt. No. 210) pursuant to 18 U.S.C. § 3142(i).  That statutory provision provides that the Court, after entering an order of detention, may later permit the defendant's temporary release if the Court "determines such release to be necessary for preparation of the person's defense or for another compelling reason."

Defendant argues that he should be granted temporary release due to his medical condition and the local jails' failure to properly treat that condition, and so that he may aid in the preparation of his defense.  The Government states that at the jail, detainees may receive incoming phone calls from their attorneys after the attorneys apply for a PIN number and those applications are approved.  Due to the pandemic, the facility does not permit "contact" visits other than in special circumstances, but non-contact visits are permitted.

"A defendant's serious medical conditions can constitute a compelling reason for release . . . In deciding whether to temporarily release a defendant to whom bail was previously denied, 'a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention' . . . A

13

defendant seeking temporary release under § 3142(i) has the burden of showing that temporary release is 'necessary' in his or her case." *United States v. Soto*, 19-CR-903 (KMW), 2020 WL 3412938, 2020 U.S. Dist. LEXIS 108611, *3-4 (S.D.N.Y. June 22, 2020) (internal citations omitted).

After weighing the reasons that precipitated Magistrate Judge Bowman's denial of Defendant's bail motion, as well as the evidence contained in the records concerning Defendant's medical condition, the Court finds that Defendant's Crohn's disease and asserted obstacles to assisting in his defense do not override the above-stated reasons for detaining Defendant.

## CONCLUSION

For the reasons stated above, Defendant's appeal pursuant to 18 U.S.C. § 3145(b) (Dkt. Nos. 211, 215) to Magistrate Judge Bowman's revoke pretrial detention order (*see* Dkt. No. 43, pp. 13-15) is DENIED.

Defendant shall remain committed to the custody of the Attorney General pursuant to 18 U.S.C. § 3142(e) for confinement in a correctional facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Attorney General shall afford Defendant a reasonable opportunity for private consultation with counsel.

The Court directs that on order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of his appearance in connection with any Court proceeding.

This ruling is without prejudice to Defendant's right to the presumption of innocence, and to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of his pretrial detention based upon changed circumstances.

Moreover, Defendant's motion (Dkt. No. 210) for temporary release pursuant to 18 U.S.C. § 3142(i), is also DENIED, for the above-stated reasons.


**SO ORDERED.**

_____s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   December 7, 2021